IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| GOODWYN, MILLS & CAWOOD, INC., a corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:12cv549-MHT (WO) |
| BLACK SWAMP, INC. d/b/a Black Swamp Mitigation Bank, a corporation, and MURPHREE EVANS, an individual, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

OPINION AND ORDER

Plaintiff Goodwynn, Mills & Cawood, Inc. brought this
action against defendants Black Swamp, Inc. (d/b/a Black
Swamp Mitigation Bank) and Murphree Evans (Black Swamp's
President and Director) claiming breach of contract,
breach of implied-in-fact contract, quantum meruit,
unjust enrichment, breach of the duty of good faith and
fair dealing, suppression, promissory fraud, and
conversion. Subject-matter jurisdiction is proper under
28 U.S.C. § 1332 (diversity). The case is now before

this court on Black Swamp and Evans's motion to transfer venue from the Middle District of Alabama to the Northern District of Mississippi.  For the reasons that follow, the motion will be denied.

## I. BACKGROUND

Goodwyn is an Alabama corporation with its principal place of business in Montgomery, Alabama, which is home to this court and where Goodwyn instituted this case. Goodwyn provides various consulting services, including assistance to landowners who are seeking to obtain approval under federal and state law to use their land for 'mitigation banks.'

A mitigation bank is, generally speaking, in the business of creating new wetlands.  The Clean Water Act, 33 U.S.C. § 1251 et seq., as enforced by the Army Corps of Engineers, protects the nation's wetlands by, among other things, requiring that persons or businesses that adversely impact existing wetlands compensate for the

damage by establishing new wetlands.  They often do so through third-party mitigation banks.  <u>See, e.g.</u>, <u>Highview Eng'g, Inc. v. U.S. Army Corps of Engineers</u>, 2010 WL 2106664, at *1 (W.D. Ky. May 24, 2010) (Simpson, J.) (describing the role of mitigation banks); United States E.P.A., Mitigation Banking Factsheet, <u>available at</u> http://www.epa.gov/owow/wetlands/facts/fact16.html (same).

Black Swamp, one such landowner, is a Mississippi corporation (of which Evans is a shareholder, President, and Director) with its principal place of business in an area adjacent to Aberdeen, Mississippi.  Aberdeen is home to the U.S. District Court for the Northern District of Mississippi.

In 2004, Evans, on behalf of Black Swamp, made a trip to Montgomery to meet with Goodwyn and discuss retaining its services.  That year, Goodwyn began providing Black Swamp and Evans with assistance in establishing the Black Swamp Mitigation Bank.  The efforts were successful, and

the bank began making money in late 2008.  During those intervening years, despite the ongoing work, the parties were still negotiating the terms of their contractual relationship.  According to Goodwyn (and denied by Black Swamp and Evans), the contract was finalized in late 2008, after the first money started coming in.  At that time, Evans visited Goodwyn in Montgomery to execute the finalized contract.  That trip was Evans's second, and last, visit to the city.  (Goodwyn alleges that Evans traveled to the Middle District of Alabama a third time to attend a meeting related to the parties' business, but that visit was to Prattville, Alabama, not Montgomery.) The contract (which Black Swamp and Evans contend is no contract at all) provided that Goodwyn's various services were to be compensated from a percentage of the money the Black Swamp Mitigation Bank would make in the future.

At some point, the relationship went sour and Black Swamp stopped making payments that Goodwyn claimed were due.  Goodwyn filed this lawsuit in the U.S. District

4

Court for the Middle District of Alabama to recover the debt.  Black Swamp and Evans moved to have this court transfer the case from the Middle District of Alabama (which, like Goodwyn, has its home in Montgomery, Alabama) to the U.S. District Court for the Northern District of Mississippi (which, as noted above, is near the Black Swamp Mitigation Bank).  They do so under 28 U.S.C. § 1406(a) or, in the alternative, 28 U.S.C. § 1404(a).

## II. DISCUSSION

### A.

28 U.S.C. § 1406(a) requires that, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  For this court to transfer the case pursuant to § 1406(a), venue in this district must be improper.

Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

Black Swamp and Evans contend that venue is proper in the Northern District of Mississippi, because the most substantial part of the events at issue in this case occurred there, not here.  But that argument misses the mark.  The language of 28 U.S.C. § 1391 "contemplates some cases in which venue will be proper in two or more districts." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) (noting that before it was amended, § 1391 once "provided for venue only in the single district 'in which the claim arose'").  Under the current statute, venue may be proper in any number of districts in which a "substantial part" of the events at issue occurred.  As such, in ruling on a motion under § 1406(a), the court is not required to weigh the events that occurred in Mississippi against those that took place in Alabama and choose which venue is more proper;

6

rather, even though "a substantial part of the events or omissions giving rise to" the claim in this litigation may have occurred in Mississippi, so long as the same can be said as to the Middle District of Alabama, venue is proper in this district.

As Black Swamp and Evans have challenged venue under § 1406(a), Goodwyn, the party that chose to institute this case in the Middle District of Alabama, now must carry the burden of showing that its choice of venue was correct, that is, that "a substantial part of the events or omissions giving rise to the claim" asserted in this case occurred in the Middle District of Alabama. <u>Reyes v. JA & M Developing Corp.</u>, 2012 WL 3562024, at *3 (S.D. Fla. 2012) (Rosenbaum, J.). But Goodwyn's burden is not heavy. "'[T]he plaintiff must present only a prima facie showing of venue.'" <u>Home Ins. Co. v. Thomas Indus., Inc.</u>, 896 F.2d 1352, 1355 (11th Cir. 1990) (quoting <u>Delong Equipment Co. v. Washington Mills Abrasive Co.</u>, 840 F.2d 843, 845 (11th Cir. 1988)). A district court

may decide whether a plaintiff's choice of forum is proper by reference to factual allegations made in the plaintiff's complaint and supplemental evidence in the form of affidavits submitted by both parties, and the court need not conduct an evidentiary hearing. <u>Id</u>. The court will assume that facts alleged in the plaintiff's complaint are true if they are not controverted by the defendant. <u>Id</u>. But, even if the defendant submits evidence that conflicts with the plaintiff's factual allegations and evidence, "the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." <u>Id</u>. Essentially, the prima-facie standard, the determination of which may be made on the pleadings, boils down to one of 'plausibility'; to withstand a motion to transfer on the basis of plaintiff's venue of choice being improper, the plaintiff must show only that the venue chosen is plausibly proper. <u>Cf</u>. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If the plaintiff meets this light standard, then the burden shifts to the defendant, as the movant, to show why venue is improper.  Canal Ins. Co. v. Yelder, 2010 WL 2640241

at *1 (M.D. Ala. June 22, 2010) (Thompson, J.) ("As [defendant] Harco has objected to the venue under 28 U.S.C. § 1406(a), it bears 'the burden of establishing that venue is improper.'") (quoting 17 James Wm. Moore, et al., Moore's Federal Practice § 110.01[5][c] (3d ed. 2012)).

In this case, which is essentially a contract dispute, the parties signed their contract (or, as Black Swamp and Evans contend, signed some document that was a part of contract negotiations but was not a contract) in the Middle District of Alabama.  Whether the court

9

ultimately agrees with either Goodwyn or Black Swamp and
Evans as to the legal significance of the document is
immaterial for the venue inquiry.  Both parties agree
that the document was drafted and signed in the Middle
District of Alabama, and that event, regardless of its
contested legal significance, is clearly "a substantial
part of the events or omissions giving rise to" the claim
in this litigation.  Moreover, although the record
currently before the court does not wholly illuminate the
nature of the services Goodwyn offered Black Swamp and
Evans, it appears clear that at least some of those
services took place in this district.  These events also
plainly constitute "a substantial part of the events or
omissions giving rise to the claim."  Therefore, to the
extent that Black Swamp and Evans's motion to transfer
venue rests on § 1406(a), it will be denied; Goodwyn has
pointed to the basis for a prima-facie finding of proper
venue in Alabama, and Black Swamp and Evans have failed

to convince the court that the conclusion should be otherwise.

## B.

Black Swamp and Evans next invoke 28 U.S.C. § 1404(a). That statute authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice." Id. "Because federal courts normally afford deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." Carroll v. Texas Instruments, Inc., _____ F. Supp. 2d _____, _____, 2012 WL 1533785, at *1 (M.D. Ala. May 1, 2012) (Thompson, J.) (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)). "A district court has broad discretion in weighing the conflicting arguments as to venue, but must engage in an

individualized, case-by-case consideration of convenience and fairness." Id. (quotation marks and citations omitted).

"In resolving a § 1404(a) motion, the court first determines whether the action could have originally been brought in the proposed district of transfer" (here, the Northern District of Mississippi), and, "if so, the court then weighs the convenience of the parties and considers interests of justice to determine whether a transfer is appropriate." Id. at ____, 2012 WL 1533785, at *2 (citing C.M.B. Foods, Inc. v. Corral of Md. Ga., 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (Thompson, J.)). Here, as Goodwyn concedes, there is no question that this case could have originally been brought in the Northern District of Mississippi.

Accordingly, the court's inquiry focuses solely on whether the balance of justice and convenience favors transfer. In making this determination, courts generally consider a number of non-exhaustive factors, including

the following: the plaintiff's initial choice of forum; the convenience of the parties; the relative means of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency.  Id.

First, as to the plaintiff's choice of forum, Goodwyn's principal place of business is in the district chosen for this litigation: the Middle District of Alabama.  Goodwyn's choice of venue in its home district should be given considerable weight and should not be disturbed absent other factors that weigh strongly in favor of transfer.  Id.; see also Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.") (internal quotes and citation omitted).

Second, the court turns to the "convenience for and cost of attendance of witnesses," which is an important factor.  <u>Carroll</u>, ____, F. Supp. 2d at ____, 2012 WL 1533785, at *3.  For non-party witnesses, "it is sometimes dubbed the single most important factor in determining whether the transfer of venue is proper." <u>Id</u>.  "Because this factor may be so important, some courts view it as helpful if the party seeking transfer clearly specifies the witnesses to be called and makes a general statement of what their testimony will cover." <u>Id</u>. (citing <u>Neil Bros. Ltd., v. World Wide Lines, Inc.</u>, 425 F. Supp. 2d 325, 329 (E.D. N.Y. 2006) (Spatt, J.)). "After that, the reasoning continues, a district court may be able to 'assess the relevance and materiality of the information the witness may provide.'"  <u>In re Genentech, Inc.</u>, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

In other words, resolution of the convenience-of-witnesses issue should not be a battle between the parties of the lengths of witness lists; the court

"should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." <u>Neil Bros.</u>, 425 F. Supp. 2d at 329 (internal quotation marks and citations omitted)); <u>see also</u> <u>Dale v. United States</u>, 846 F. Supp. 2d 1256, 1258 (M.D. Fla. 2012) (Presnell, J.) (noting that the court "will not simply 'tally the number of witnesses' in each prospective forum to determine which is more convenient"); <u>Microspherix LLC v. Biocompatibles, Inc.</u>, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (Moore, J.) ("In assessing the convenience of the witnesses, the mere length of an individual parties' list of potential witnesses is not of great significance."). The resolution should turn on a more substantive and qualitative analysis, based on the totality of the circumstances, of the comparative real burdens faced by the parties in gathering, preparing, and presenting their evidence.

15

Here, Black Swamp and Evans identify nine potential non-party witnesses to serve at trial, all of whom reside in various parts of Mississippi. For six of those nine, Black Swamp and Evans provide the court with names, titles (for example, "Engineer"), and addresses in Mississippi, but provide no other information that would allow the court to determine the role the persons listed play in the dispute. With such terse descriptions, the court cannot "assess the relevance and materiality of the information the witness[es] may provide," Carroll, ____ F. Supp. 2d at ____, 2012 WL 1533785, at *3 (quoting Genentech, 566 F.3d at 1343), and thus engage in the required substantive and qualitative analysis of the real burden Black Swamp and Evans face. As to the three non-party witnesses for whom Black Swamp and Evans provide more information, the court agrees that those witnesses are likely to provide relevant, material testimony. But, Black Swamp and Evans offer no evidence of hardship that would result from requiring those

16

witnesses to travel to Montgomery for trial (for example, as a consequence of precarious financial circumstances, poor health, or other limiting conditions).  There is no indication that the witnesses would be unable or unwilling to offer their testimony in Montgomery.  Cf. Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (Moore, J.) ("[I]t is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important.").  By identifying several witnesses who reside closer to the Northern District of Mississippi than this court, Black Swamp and Evans have only slightly established cause for transferring venue.

Third, the court next considers the public interest in having this dispute resolved in either Alabama or Mississippi.  Black Swamp and Evans lean heavily on this factor, claiming that the "fate of a mitigation bank that serves a 17-county area in Mississippi will have [a] significant impact and consequences in the State of

17

Mississippi and thus public interest 'heavily' favors having the case transferred there." Pl.'s Mot. (Doc. No. 6) at 6. But, the case that Black Swamp and Evans cite for support, Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49-50 (D.D.C. 2006) (Kollar-Kotelly, J.), is inapposite. In that case, plaintiffs asked for injunctive relief regarding the U.S. Corps of Engineers' operations in Florida. The U.S. District Court for the District of Columbia held that the case was "local to Florida and ... one in which Florida and its residents have a great interest," and that factor "weigh[ed] heavily in favor of transfer" to Florida. Id. at 49. By contrast, Goodwyn in this case does not ask for injunctive relief that could have a significant impact on the Mississippi environment, but only for payment of a debt. It is true that a judgment from this court ordering payment could have an indirect effect on the continued operations of the mitigation bank, but that possibility seems speculative and remote. The record is

insufficient to show anything more than a minor public interest, if that, in having this dispute resolved in Mississippi.

On the other hand, all things considered, the public interest may actually favor Alabama over Mississippi, given that Black Swamp and Evans have not denied Goodwyn's contention that Alabama law controls in this case. "Generally, this court agrees that it is appropriate to have the trial of a diversity case in the forum which provides the law of decision, rather than in another forum which will have to apply foreign law." Holmes v. Freightliner, LLC., 237 F. Supp. 2d 690, 695 (M.D. Ala. 2002) (Albritton, C.J.).

Lastly, the court turns to comparative access to evidence in this court versus the Northern District of Mississippi. Black Swamp and Evans argue that "[a]lthough jury views of the [property involved in a trial] are rarely necessary, photographs and other evidence may not constitute adequate substitutes for a

19

site visit." Pl.'s Mot. (Doc. No. 6) at 7 (citing <u>Speed</u>
<u>Trac Technologies, Inc. v. Estes Express Lines, Inc.</u>, 567
F. Supp. 2d 799, 804 (M.D. N.C. 2008) (Schroeder, J.);
<u>compare</u> <u>United Air Lines, Inc. v. United States</u>, 192 F.
Supp. 796, 798 (D. Del. 1961) (Wright, J.) ("A view of
the scene ... is not likely to be of much aid, for
topographical maps or photographs, supplemented by expert
testimony, are likely to be far more illuminating to the
trier of fact than a glimpse at some mountains."). In
general, in deciding venue transfer motions, courts
disregard the possibility of a site visit except "in the
most exceptional cases." 15 Charles Alan Wright & Arthur
R. Miller, <u>Federal Practice & Procedure</u> § 3854 (3d ed.)
("Courts should refuse to take into account the
possibility of a jury view unless the moving party has
shown how a view of the locality of the events in
litigation could be helpful."). While site visits may
often be desirable, Black Swamp and Evans have not by any
stretch of the imagination shown that a site visit will

be desirable or necessary in this case.  Nothing in the
record before the court indicates that a site visit would
be warranted.

At the end of the day, after considering the totality
of the circumstances, the court cannot conclude that the
case should be transferred to Mississippi.  Black Swamp
and Evans have not met their burden of demonstrating that
justice and fairness require a transfer in this case.  To
the extent that Black Swan and Evans have shown that some
factors could be viewed as supporting transfer, they have
done so "only slightly."   Carroll, ___ F. Supp. 2d at
____, 2012 WL 1533785, at *8.  In such a case, and giving
deference to Goodwyn's choice of forum, the court has no
choice but to conclude that transfer would not be in the
interest of justice. See id.; Johnston v. Foster-Wheeler
Constructors, Inc., 158 F.R.D. 496, 503 (M.D. Ala. 1994)
(Albritton, J.) ("If the transfer would merely shift the
inconvenience from one party to the other, or if the
balance of all factors is but slightly in favor of the

movant, the plaintiff's choice of venue should be given deference.") (internal quotations omitted)).

                              ***

     Accordingly, it is ORDERED that defendants Black Swamp, Inc. and Murphree Evans's motion to transfer venue (Doc. No. 6) is denied.

     DONE, this the 19th day of October, 2012.

                         /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE